Bruce **STEIN** and Martha Dahlinger, Plaintiffs,

v.

**PLAINWELL COMMUNITY SCHOOLS, et al., Defendants.**

No. K85–197 CA.

United States District Court, W.D. Michigan, S.D.

March 22, 1985.

Ross E. Chapman, Deming, Hughey, Lewis, Keiser, Allen & Chapman, P.C., Kalamazoo, Mich., Robert A. Sedler, Detroit, Mich., for plaintiffs.

Lawrence J. Murphy, Howard & Howard, Kalamazoo, Mich., for Portage Public Schools & Conti.

Douglas W. Peterson, Gemrich, Moser, Dombrowski, Bowser & Fette, Kalamazoo, Mich., for Plainwell Community Schools & Jones.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiffs, parents of children graduating this year from the defendant public school districts, bring this action pursuant to 42 U.S.C. § 1983 to enjoin the defendants from including invocations and benedictions in their graduation ceremonies. Plaintiffs contend that, if defendants proceed with their plans to include these forms of prayer in the graduation ceremonies, they will violate the establishment clause of the first amendment.

## I. FACTUAL BACKGROUND

The parties have stipulated to the facts relevant to this motion for preliminary relief. Set forth below are summaries of the general facts of each case. Other pertinent facts are incorporated into the Court's discussion of the applicable law.

The Plainwell Community School district plans to hold its annual high school commencement on June 6, 1985, at an outdoor athletic facility. Attendance by graduating seniors is voluntary, and receipt of diplomas is not conditioned upon attendance.

Plainwell has included invocations and benedictions as a regular part of past high school commencement exercises. Since 1980, the general practice has been to have one graduating senior offer an invocation and a different senior a benediction.[1] The students who offer the invocation and benediction are volunteers chosen from the group of honor students who audition, but are not selected, to give the two commencement addresses.

The students are advised to keep the invocation and benediction brief. Prior to the commencement, they are required to practice before the school's speech instructor, but the administration in no way attempts to monitor the content of their presentations.

The Portage Public School district is planning to hold commencement exercises for Portage Central High School on May 31, 1985. The ceremony will be held in the high school football stadium. As with the Plainwell graduation, attendance is voluntary, and receipt of diplomas is not conditioned on attendance.

For the past fifteen years, the school has permitted the graduating seniors to organize and develop the content of their own commencement exercises. During each of the fifteen years, the graduation ceremony has included an invocation and benediction delivered by a minister selected by representatives of the graduating class. The invocation and benediction account for approximately three minutes during a seventy-five minute ceremony.

Neither the school administrators nor the senior class representatives preview the content of the minister's presentation. The minister is instructed, however, to keep the invocation and benediction nondenominational[2] and short in time.

Neither the stipulations of fact regarding the Plainwell schools nor those regarding the Portage schools mention anything about the proposed content of the prayers. Nor do they provide information regarding the content of invocations and benedictions offered in past years.

## II. APPLICATION OF THE LAW

 This case is brought before the Court on a motion for a preliminary injunction. In determining whether an injunction should issue, the Court must consider:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

In the context of this case, the focus of the Court is drawn to the first consideration, the probability of success on the merits. The second and third factors, in effect, cancel out each other. If the practice of saying invocations and benedictions at graduation ceremonies *is not* constitutional, the plaintiffs will be irreparably injured by having to submit to an unconstitutional practice. On the other hand, if it *is* constitutional, the Court would be infringing on the first amendment free speech rights of the students by enjoining them from carrying out their commencement exercises as planned. The fourth factor, the public interest, will be served if the constitution is upheld. Thus this factor, like the second and third, leads the Court back to an inquiry of the merits of plaintiffs' claim.

The first amendment to the United States Constitution provides, in part, that there shall be "no law respecting the estab-

---

**1.** The school deviated from this practice in 1982 when the senior class officers invited a local Baptist minister to offer the invocation and benediction.

**2.** It is not clear to the Court whether "nondenominational" means harmonious with both Christian and Judaic beliefs or just harmonious with all Christian beliefs. The Court has assumed the latter.

lishment of religion." The Supreme Court has held that the "establishment clause" applies with full force to state governmental bodies such as the Portage and Plainwell school boards. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

The issue presented by the facts of this case falls into a grey area of establishment clause doctrine. On the one hand, the Supreme Court has ruled that the recitation of nondenominational prayers and the daily reading of the Bible in public school classrooms are barred by the establishment clause. *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). On the other hand, the Court has also held that the Nebraska state legislature's practice of opening each day with a prayer by a state-paid chaplain does not violate the establishment clause. *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983).[3] The practice contested in this case, that of offering invocations and benedictions at high school graduations, falls into the grey area between these two extremes. Although a high school graduation involves public school students, as in *Abington* and *Engel,* it does not present a question regarding a daily routine that takes place in the classroom itself. Similarly, while the graduation ceremonies incorporate simple opening prayers as in *Marsh,* they do not present the legislative setting that was critical to the Court's decision to uphold the practice in that case. Thus, this Court is charged with deciding whether the shade of grey presented by the facts of this case is closer to the white of *Marsh* or the black of *Engel* and *Abington.*

This Court finds, as have other courts that have considered this same issue, that it is only able to answer the question presented by carefully considering the specific factual context in which the issue arises. *See Graham v. Central Commu-*

nity *School District,* 608 F.Supp. 531 (D.Iowa, 1985) (holding the practice unconstitutional); *Doe v. Aldine Independent School District,* 563 F.Supp. 883 (S.D.Texas 1982) (holding the practice unconstitutional); *Grossberg v. Deusebio,* 380 F.Supp. 285 (E.D.Va.1974) (holding the practice constitutional); *Goodwin v. Cross County School District,* 394 F.Supp. 417 (E.D.Ark. 1973) (holding the practice constitutional); *Wood v. Mount Lebanon Township School District,* 342 F.Supp. 1293 (W.D.Pa.1972) (holding the practice constitutional).

The Court is guided in its determination by the test enunciated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In that case, the Court held that a governmental act that is challenged under the establishment clause is valid only if:

1) it has a secular legislative purpose;

2) its principal or primary effect is one that neither advances nor inhibits religion; *and*

3) it does not foster an excessive governmental entanglement with religion.

*Id.* at 612–13, 91 S.Ct. at 2111.

Although the Supreme Court has recently indicated an unwillingness to be strictly bound by the three prongs of the *Lemon* test, it still apparently relies on *Lemon* as a guide. *See Lynch v. Donnelly,* 465 U.S. 668, ——, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984) (although stating that it could not be bound by the strictures of any single test, the Court nevertheless applied the three prongs of the *Lemon* test to the facts before it). A recent Sixth Circuit case similarly looked to the guidance of the *Lemon* test in resolving an establishment clause issue. *Americans United for Separation of Church and State v. Grand Rapids School District,* 718 F.2d 1389 (6th Cir. 1983), *cert. granted* —— U.S. ——, 104 S.Ct. 1412, 79 L.Ed.2d 739 (1984). Accordingly, this Court will analyze this case by inquiring into the issues raised by the three prongs of the *Lemon* test.

---

**3.** Counsel for plaintiffs conceded at oral argument that, under the rationale of *Marsh,* the offering of an invocation or benediction at the meetings of the Plainwell and Portage school boards would not offend the establishment clause.

The first issue for the Court is whether the Portage and Plainwell school districts have a valid secular purpose for including invocations and benedictions in their graduation ceremonies. Plaintiffs contend that the school districts have no valid secular purpose. After all, they argue, invocations and benedictions are prayers, and prayers are inherently religious.

The Court agrees only partially with plaintiffs' characterization of the kind of prayer at issue here. Whether an invocation or benediction is "inherently religious" depends on one's vantage point. For example, the Court assumes that the purpose of the minister offering the invocation and benediction at the Portage graduation will be to make supplication, albeit in a nondenominational form, to God. Thus, to the minister, the purpose of the prayer will be religious. At the same time, to some members of the audience, the invocation and benediction will be merely a formal way of opening and closing the graduation ceremony. To these people, the purpose of the prayer will be ceremonial. Thus, the Court recognizes a dual nature of prayer in this context, partly religious and partly ceremonial.

The Supreme Court has recently emphasized that, when determining whether the acts of a governmental body have violated the establishment clause, a court must look to that body's purpose "in context." *Lynch v. Donnelly,* 465 U.S. at ——, 104 S.Ct. at 1362. In *Lynch,* the Court held that the district court erred by focusing on the religious nature of a nativity scene that was part of a city's Christmas display. The lower court overlooked what the Supreme Court viewed as the secular nature of the display:

> The City ... has principally taken note of a significant historical religious event long celebrated in the Western World. The creche in the display depicts the historical origins of this traditional event long recognized as a National Holiday.

465 U.S. at ——, 104 S.Ct. at 1363. The Supreme Court did not deny that, to some, a nativity scene is a very important religious symbol. It recognized, however, the dual nature of a creche: as well as having religious significance, the creche has historical and cultural significance in our society. *See also Abington School District v. Schempp,* 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963) (although daily Bible readings violate the establishment clause, study of the Bible as an objective part of a secular program of education may be constitutional); *Stone v. Graham,* 449 U.S. 39, 42, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980) (per curiam) (although the establishment clause does not permit posting the Ten Commandments as a religious admonition, the practice of integrating them into an appropriate study of history, civilization, ethics or comparative religion may survive constitutional scrutiny).

■ Given the dual nature of the kind of prayer at issue in this case, the Court must not be misled by looking solely at the purpose of the person who is delivering the prayer. Even if the purpose *of the speaker* is purely religious, the practice may still be constitutional if the purpose *of the sponsoring governmental body* is primarily secular.[4] *See Widmar v. Vincent,* 454 U.S. 263, 271–73, 102 S.Ct. 269, 275–76, 70 L.Ed.2d 440 (1981) (a university's policy of providing equal access for all student groups to university facilities does not violate the purpose prong of the *Lemon* test when some student groups use the facilities for admittedly religious purposes). Accordingly, the Court must look specifically at the purposes of the defendant school districts in sponsoring ceremonies that include short forms of prayer.

Unlike cases where the legislative history of a government's action states its purpose,[5] the record in this case contains no clear articulation of the purpose of the defendant school districts. The stipula-

**4.** Of course, the purpose of the speaker may be some evidence as to the purpose of the governmental body.

**5.** *See, e.g., Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

tions of fact, however, reveal at least two reasons why the school defendants have planned the ceremonies to include short forms of prayer.

First, both school districts are following a long tradition of including invocations and benedictions in their ceremonies. Although "no one acquires a vested or protected right in violation of the Constitution by long use ..., an unbroken practice ... is not something to be lightly cast aside." *Walz v. Tax Commissioner,* 397 U.S. 664, 678, 90 S.Ct. 1409, 1416, 25 L.Ed.2d 697 (1970), *quoted in Marsh, supra,* 463 U.S. at 788–789, 103 S.Ct. at 3334–35. In *McGowen v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court upheld Maryland's Sunday closing laws against an establishment clause challenge. After finding that the legislature had the valid purpose of providing one uniform day of rest, the Court found that the establishment clause was not violated when the state selected Sunday, the traditional sabbath of the majority of Christian faiths, as the proclaimed day of rest. Similarly, in this case, the school must provide some form of solemn opening and closing for these ceremonial events. The fact that they chose an opening and closing form from the Christian tradition is not itself reason to prohibit the practice.

Second, the schools have the purpose of permitting the students to either plan or participate in their own commencement exercises. The students of Portage High School are permitted to organize and develop their own graduation program. The fact that the students have, for the past fifteen years, chosen to include invocations and benedictions by local clergy does not mean that the decision of the school district to encourage the students to plan their own ceremony was motivated by any religious purpose. Plainwell High School, although not turning over the planning function to the students, encourages students to participate in the commencement exercises. Honor students are encouraged to audition to give the two student commencement addresses. Of those honor students who audition but are not selected to give the major addresses, the school solicits two volunteers to give the invocation and benediction. The school does not seek to control the content of the students' prayers. Thus, it appears that once the school meets its objective of picking an additional two students to participate in the ceremony, it has no further involvement.

In addition finding these two valid secular purposes, the Court is influenced by the fact that there is no evidence of a secret purpose of the school district to proselytize the audience to accept the tenets of any particular faith. *See Marsh, supra,* 463 U.S. at 790–791, 103 S.Ct. at 3335 (noting that the framers of the first amendment did not consider legislative opening prayers to be a proselytizing activity or a means of symbolically placing the government's official seal of approval on one religious view). Thus, this case can be distinguished from *Graham v. Central Community School District, supra,* where the record revealed that, on at least one occasion, Christian prayer was permitted in the classroom, that Gideon Bibles were distributed to students in the classroom, and that the president of the school board had remarked that she hoped that plaintiffs' children could be exposed to Christianity in school. Similarly, this case can be distinguished from *Doe v. Aldine Independent School District,* 563 F.Supp. 883, 885 (S.D. Texas 1982) where the record showed that the singing of a school prayer was frequently initiated by the principal or another employee of the public school.

Even if the purpose of defendant school districts is primarily secular, the practice of offering prayers at graduation will violate the establishment clause if the Court finds that the principal or primary effect of including invocations and benedictions is to advance religion. *Lemon v. Kurtzman,* 403 U.S. at 612, 91 S.Ct. at 2111. Based on the facts before the Court in this case, the Court has concluded that this "primary effect" prong is not violated. The Court finds a number of factors pivotal to its decision.

First, the graduation ceremony is not a mandatory part of the school curriculum. The Court recognizes that the voluntary nature of the exercises itself is not dispositive. *See Engel v. Vitale*, 370 U.S. at 430, 82 S.Ct. at 1266 (although the school district permitted students to leave the room during opening prayers, the Court held that the fact that the prayers were voluntary did not "serve to free it from the limitations of the Establishment Clause"); *Lemke v. Black*, 376 F.Supp. 87, 89 (E.D. Wis.1974) (voluntariness of attendance at graduation ceremony not dispositive). Yet, one effect of the voluntary nature of the commencement is that it minimizes the sense of the audience that the school is endorsing the content of the exercises. *See Wood v. Mount Lebanon School District*, 342 F.Supp. 1293, 1294 (W.D.Pa. 1972).

Similarly, the fact that speakers other than school employees deliver the invocations and benedictions and that the schools have no control over their content serves to minimize the sense that the school is endorsing any religious position. *See Wood, supra* at 1294. Unlike the case in *Engel v. Vitale, supra* 370 U.S. at 425, 82 S.Ct. at 1264, the school itself is not composing a prayer. Unlike the facts of *Graham v. Central Community School District, supra* at 532–533, the school board itself does not decide whether the graduation ceremony will include an invocation and benediction. Again, the Court recognizes that the fact that the school acquiesces in the decisions of the students, rather than affirmatively acts itself, cannot alone be dispositive. *See Collins v. Chandler Unified School District*, 644 F.2d 759, 761 (9th Cir.) (the "cases support no meaningful distinction between school authorities actually organizing the religious activity and officials merely 'permitting' students to direct the exercises"), *cert. denied*, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981). Nevertheless, as with the voluntary nature of the exercises, it is a factor that serves to minimize the sense that the school is endorsing a particular religious position.

Third, there is no danger of daily indoctrination. The contested prayers take only a few minutes, are given only once a year, and reach a different audience each time. *Compare Engel v. Vitale* 370 U.S. at 438, 82 S.Ct. at 1270 (prayer read at beginning of each day); *Abington School District v. Schempp*, 374 U.S. at 205–11, 83 S.Ct. at 1562–65 (Bible read daily).

Fourth, the makeup of the audience at the graduation ceremonies lessens the possibility that any part of the ceremony could have the effect of advancing religion. The plaintiffs alleging injury in this case, both parents of graduating seniors, are adults who are "presumably not readily susceptible to 'religious indoctrination'." *Marsh, supra*, 463 U.S. at 790–791, 103 S.Ct. at 3335; *see also Collins v. Chandler Unified School District*, 644 F.2d at 762. Other than parents, the majority of the audience at graduation will consist of the graduating seniors themselves, many of whom are legally adults, most of whom are beyond the age where they are readily impressionable. *Cf. Americans United for Separation of Church and State v. Grand Rapids School District, supra*, at 1405 (noting a special concern because the shared-time program primarily assisted *elementary* schools).

Fifth, the graduation is not part of the educational program of the school. The purpose of the ceremony is not pedagogical; it is merely ceremonial. Because the audience does not attend the graduation with the expectation of receiving instruction, religious or otherwise, the Court finds it difficult to believe there is any danger of the school being perceived as attempting to advance religion. Rather, the invocation and benediction will be viewed in the ceremonial context, as a commonplace ritual that the graduating seniors are likely to observe at many private and public ceremonies that they attend in the remainder of their adult lives. *See Grossberg v. Deusebio*, 380 F.Supp. at 289 (noting a common practice of using invocations at public functions); *Wood v. Mount Lebanon Township School District*, 342 F.Supp. at 1295 ("such customary remarks are commonplace in

our society"); *see also Lynch v. Donnelly,* 465 U.S. at ——, 104 S.Ct. at 1360–61 (detailing examples of official acknowledgement of religious values); *Zorach v. Clauson,* 343 U.S. 306, 312–13, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952) (detailing examples of public references to God).

Finally, there is no evidence that the speakers intend to use the invocations and benedictions as an opportunity to proselytize.[6] In this regard, the Court's analysis is handicapped by the summary nature of these proceedings and the slender stipulation of facts. The facts that are before the Court, however, simply do not compel the conclusion that the primary effect of the practice of including benedictions and invocations at the graduations will be to advance religion.

The third prong of the *Lemon* test directs the Court to consider whether the practice of including short prayers at graduation ceremonies fosters excessive governmental entanglement with religion. The Court finds that the entanglement prong is not violated in this case. A once-a-year ceremony requiring minimal relations between school officials and local clergy does not present the kind of entanglement prospects that the courts have found violative of the establishment clause. *See, e.g., Americans United for Separation of Church and State v. Grand Rapids School District,* 718 F.2d at 1400–03, 1407–08 (entanglement problems posed by shared time program).

█ In summary, the Court concludes that the proposed plans for graduation at Portage and Plainwell High Schools, as developed in the facts before the Court, are motivated by secular purposes of the school districts, do not have the primary effect of advancing religion, and will not foster excessive entanglement of government with religion. Thus, under the analysis of *Lemon,* the Court is directed to a

conclusion that the proposed practices do not violate the establishment clause. Accordingly, plaintiffs' motion for a preliminary injunction is denied.

---

6. In *Marsh,* the Supreme Court noted that [t]he content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer.
463 U.S. at 794–795, 103 S.Ct. at 3337.