Melvin BREEN, et al., Plaintiffs,

v.

Phillip E. RUNKEL, Defendant.

No. G85–531 CA.

United States District Court,
W.D. Michigan, S.D.

July 25, 1985.

---

Philip R. Sielski, Bussard & Sielski, Grand Haven, Mich., for plaintiffs.

Gerald F. Young, Paul J. Zimmer, Asst. Attys. Gen., Lansing, Mich., for defendant.

OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiffs in this case, teachers, students, and parents of students at Allendale Elementary School, seek declaratory and injunctive relief against Phillip E. Runkel, Michigan's Superintendent of Public Instruction. According to the allegations of their complaint, plaintiff teachers, from time to time, pray in their classrooms, read from the Bible, and tell stories that have a biblical basis. Complaint ¶ 7. Plaintiff students, from time to time, attend a Bible club which meets at lunch hour at the Allendale Elementary School. The Bible club is not supported by the Allendale Public School District, nor does the school district require students to attend. Attendance is with consent of the student's parents. Complaint ¶ 8. Plaintiffs claim that defendant has directed the Allendale Public School Board of Education and the school administrators to take actions to stop these religious practices. Plaintiffs claim rights under the first amendment of the United States Constitution and article I, section 4, of the Michigan Constitution to continue their religious practices, and they petition the Court to enjoin defendant Runkel from interfering with their rights.

Defendants have moved for dismissal on the grounds that plaintiffs have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court's inquiry at this point, before the reception of any evidence, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. A complaint should not be dismissed for failure to state a claim, unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Given the crucial role which the particular facts of a case play in every first amendment analysis, special

care must be taken by trial courts in establishing factually complete records before deciding such issues. *Bender v. Williamsport Area School District*, 741 F.2d 538, 541–42 (3rd Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 1167, 84 L.Ed.2d 319 (1985); *Stein v. Plainwell Public Schools*, 610 F.Supp. 43, 46 (W.D.Mich.1985).

The Court has concluded that those portions of the complaint that claim a right of the teachers to read the Bible, pray, and tell Bible stories in the classroom have failed to state a claim upon which relief can be granted. Accordingly, these portions of the complaint must be dismissed. The Court has further concluded that it is unable to judge, without the benefit of further factual development, whether the remaining portions of the complaint state claims upon which relief can be granted. Accordingly, defendant's motion to dismiss those portions of the complaint is denied.

## RIGHTS CLAIMED BY TEACHERS

Defendant contends that the plaintiff teachers have no constitutional right to pray, read the Bible, or tell Bible stories in the classroom. He argues that such conduct is strictly prohibited by the establishment clause of the first amendment and that he, therefore, has an obligation to prohibit plaintiffs from continuing such practices.

Certainly, any analysis of this issue must start with an examination of the leading Supreme Court precedents which defendant has cited, *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), and *Abington Township School District v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). In *Engel*, the Court held that the Constitution prohibited a local school board from requiring teachers to begin each day in the classroom with a short, non-denominational prayer composed by the New York Board of Regents. The Court held the practice unconstitutional, even though the teachers did not require all pupils to recite the prayer but permitted those who wished to do so to remain silent or be excused from the room. "Neither the fact that the prayer may be denominationally neutral nor the fact that its observance on the part of the students is voluntary can serve to free it from the limitations of the Establishment Clause." 370 U.S. at 430, 82 S.Ct. at 1266. In *Abington*, the Court held invalid two separate practices calling for the reading of the Bible in the classroom. In the first, the Pennsylvania legislature had passed a statute requiring that at least ten verses from the Bible should be read, without comment, at the opening of each public school day. In the second, a local school board in Maryland adopted a rule also requiring daily Bible reading. The Supreme Court held that both of these practices violated the establishment clause of the first amendment, even though the rules permitted students to be excused from the classroom during the Bible reading exercises.

Plaintiffs argue that this case is distinguishable from *Engel* and *Abington* because the Allendale school district in no way sponsors or encourages the religious practices of the teachers. In *Engel*, plaintiffs point out, a local school board passed a resolution requiring daily prayer. In *Abington*, a state legislature and a local school board, both clearly governmental bodies, required daily Bible reading. Here, accepting the averments of the complaint as true, as the Court must at this point, the local school district in this case has no direct role in the religious practices of the teachers. Thus, plaintiffs argue, there is no "state action" that violates the establishment clause.[1]

---

1. The first amendment provides that
   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

   In *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940), the Supreme Court held that the same prohibition extends, through the fourteenth amendment, to the states. Hence, to prove that the establishment clause would be violated in this case if plaintiffs continue their practices, defendant

■ The Court cannot accept plaintiffs' argument that their classroom religious practices do not constitute "state action" and that the establishment clause, therefore, does not apply to their conduct. Under Michigan law, teachers are appointed, suspended and removed by the local school boards. Mich.Comp.Laws Ann. § 380.1231 (Supp.1985); Mich.Comp.Laws Ann. § 38.-101 (1967). The local school boards are creatures of the state and are controlled by state law. Mich.Comp.Laws Ann. §§ 380.-1–380.703 (Supp.1985); *see also Jaffree v. Wallace*, 705 F.2d 1526 (1983), *aff'd mem.* (with respect to this issue), —— U.S. ——, 104 S.Ct. 1704–05, 80 L.Ed.2d 178 (1984), *aff'd* (on other issues), —— U.S. ——, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). Thus, the Court concludes that, when they are acting in their capacity as classroom teachers, plaintiff teachers are "state actors" for purposes of this establishment clause analysis.

■ Further, the Court notes that the establishment clause places on defendant Runkel, in his role as state Superintendent of Public Instruction, the affirmative duty to ensure that individual teachers are not, through their classroom conduct, violating the guidelines of the establishment clause. *See Grand Rapids School District v. Ball*, —— U.S. ——, ——, 105 S.Ct. 3216, 3224, 87 L.Ed.2d 267 (1985) (quoting *Levitt v. Committee for Public Education*, 413 U.S. 472, 480, 93 S.Ct. 2814, 2819, 37 L.Ed.2d 736 (1973)). As noted by the Eleventh Circuit, a mockery would be made out of the establishment clause if unconstitutional activities could be carried on merely because no statute or, in this case, official school board policy authorized the activities. *Jaffree v. Wallace*, 705 F.2d at 1534.

Plaintiffs also seek to distinguish *Engel* and *Abington* on the grounds that this case tests the free speech and free exercise rights of the teachers, rather than the establishment clause limitations on a local school board or state legislature. Plaintiffs claim defendant has an obligation to

must show that plaintiffs' activity has the char-

"accommodate" practices protected by their free speech and free exercise rights.

In their brief, plaintiffs invite the Court to consider their free speech and free exercise rights in the context of a hypothetical:

Another means of examining the question is to start with the teacher outside of the public schools. Certainly her religious conduct outside the school would not be an establishment of religion, nor could the state proscribe that. On her way to the school, her conduct is not state action and she would be free to exercise her religious beliefs and preferences. While walking from the school parking lot to her assignment, could she pray silently to herself or even wear some religious symbol such as a cross or Star of David? I anticipate few objections to that religious conduct as state action. In her classroom, before the beginning of class, could she not read the Bible silently to herself and pray? When does her private conduct, unsupported by, unencouraged by and unendorsed by the State, cross the dividing line that separates "teacher action" from "state action?"

Plaintiffs' hypothetical illustrates what has come to be known as the "tension" between the free exercise clause and the establishment clause of the first amendment. *See, e.g., Bender v. Williamsport Area School District*, 741 F.2d at 541. As the Supreme Court has explained:

The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion.

*Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940), *quoted in Wallace v. Jaffree*, 105 S.Ct. at

acter of "state action."

2487; *see also Abington Township School District v. Schempp,* 374 U.S. at 217–22, 83 S.Ct. at 1568–71. In a July 1985 opinion, the Court explained further the relationship of the two clauses:

[J]ust as religion throughout history has provided spiritual comfort, guidance, and inspiration to many, it can also serve powerfully to divide societies and to exclude those whose beliefs are not in accord with particular religions or sects that have from time to time achieved dominance. The solution to this problem adopted by the Framers and consistently recognized by this Court is jealously to guard the right of every individual to worship according to the dictates of conscience while requiring the government to maintain a course of neutrality among religions, and between religion and non-religion. Only in this way can we "make room for as wide a variety of beliefs and creeds as the spiritual needs of man deem necessary" and "sponsor an attitude on the part of government that shows no partiality to any one group and lets each flourish according to the zeal of its adherents and the appeal of its dogma." *Zorach v. Clauson,* 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952).

*Grand Rapids School District v. Ball,* ── U.S. at ──, 105 S.Ct. at 3222.

■ In addition to the tension between the two religion clauses themselves, the facts of this case present a tension between the establishment clause and the free speech clause of the first amendment. The free speech clause clearly protects the rights of individuals to speak on religious topics. *Widmar v. Vincent,* 454 U.S. 263, 268–69, 269 n. 6, 102 S.Ct. 269, 273–74, 274 n. 6, 70 L.Ed.2d 440 (1981). Plaintiffs point to the case of *James v. Board of Education,* 461 F.2d 566 (2d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972), where the court held that a high school teacher who wore a black armband in class as an expression of his religious aversion to the Vietnam war did so under the protection of the free speech clause of the first amendment. Those rights, however, may be limited by the strictures that the establishment clause places on state institutions. *See Widmar,* 454 U.S. at 276, 102 S.Ct. at 277; *Bender,* 741 F.2d at 557. In the public school context, an individual's free speech right may also be limited if exercise of that right materially and substantially interferes with the requirements of appropriate discipline in the operation of the school or invades or collides with the rights of others. *Tinker v. Des. Moines Independent Community School District,* 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969).

The cited cases reveal that, even after a court concludes that individuals have asserted valid free speech or free exercise rights, that court's inquiry has not ended. When, as in this case, exercise of those individual first amendment rights might violate the mandate of the establishment clause, the Court must proceed to resolve "a constitutional conflict of the highest order." *Bender,* 741 F.2d at 557.

Plaintiffs' hypothetical presents an interesting exercise that tests that conflict. The Court need not, however, in the context of this case, resolve where along that slippery slope the line between constitutionality and unconstitutionality is drawn.

■ Because the Court concludes, as a matter of law, that the facts presented by the complaint in this case are not legally distinguishable from the facts presented in the *Engel* and *Abington* cases, it further concludes that the conduct of plaintiff teachers is constitutionally prohibited. Although plaintiffs attempt to distinguish this case on the grounds that the Allendale school district does not support or require the religious activities of the teachers, the Court does not find that this factor was important in the Supreme Court's decisions. In the *Abington* case, the Supreme Court found significant that: 1) the states were requiring Bible reading and prayer, 2) the exercises were prescribed as part of the curricular activities of students who were required by law to attend school, and 3) they were held in school buildings under

the supervision and with the participation of teachers employed in those schools. 374 U.S. at 223, 83 S.Ct. at 1572. With the exception, discussed above, that the teachers are the state actors in this case, rather than the school board or state legislature, these same factors are all present in this case: 1) the teachers are conducting Bible reading and prayer in the classrooms, 2) those exercises are part of the normal classroom activities of students required by law to attend school, and 3) the religious exercises take place in the Allendale public school buildings under the supervision and with the participation of teachers employed in those schools.

Plaintiffs could argue that the *Engel* and *Abington* cases, even if they present the same facts, were raised in a different context. In those cases, individuals were suing the state entities to prevent the religious practices. No teachers making free speech and free exercise claims were party to those suits as they are in this case. Thus, plaintiffs could argue, it is possible that the Supreme Court would have reached a different result had it been faced with the claims made by the individual teachers in this case.

The Court has carefully reviewed the *Engel* and *Abington* opinions. Admittedly, the Supreme Court did not consider those cases in the context of specific assertions of free speech and free exercise rights by teachers. The Court did, however, deal carefully and at great length with the delicate balance between the free exercise and establishment clauses. *See Engel*, 370 U.S. at 429–31, 82 S.Ct. at 1266–67; *Abington*, 374 U.S. at 217–23, 83 S.Ct. at 1568–72. Thus, an implicit holding of those decisions is that the establishment clause limitations placed on public schools outweigh whatever free speech or free exercise claims could have been asserted by individual teachers.

Accordingly, because this Court finds the facts of this case indistinguishable from those of *Engel* and *Abington*, this Court is bound by the precedent set in those cases. Although plaintiff teachers do not "shed their constitutional rights ... at the schoolhouse gate," *Tinker*, 393 U.S. at 506, 89 S.Ct. at 736, those rights are not absolute. The *Engel* and *Abington* cases hold that, whatever the extent of the teachers' rights, they do not extend so far as to permit individual teachers to pray or read the Bible in public school classrooms. Thus, this Court concludes that plaintiffs will not be able to prove any set of facts that would entitle them to relief on the claims alleging free speech and free exercise rights of the teachers to pray, read the Bible, or tell Bible stories in their classrooms. Those claims must be dismissed.[2]

### RIGHTS CLAIMED BY STUDENTS

Defendant also contends that plaintiff students have no constitutional right to attend Bible clubs during lunch hour. He argues, as with the claims of the teachers, that such conduct is strictly prohibited by the establishment clause.

Defendant has cited two recent decisions dealing with similar facts. In *Bender v. Williamsport Area School District*, 741 F.2d 538 (3d Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 1167, 84 L.Ed.2d 319 (1985), the Third Circuit held that the Constitution prohibits a student-initiated prayer club from meeting during the activity period of a public high school. In *Michigan State Board of Education v. Tri-County Area School District*, No. G84–1029 (W.D.Mich.), the Honorable Richard A. Enslen entered a preliminary injunction on October 1, 1984, enjoining that school district from permitting Bible clubs to meet on school grounds during the pendency of the suit.

Although the cases cited by defendants prohibited the practice of holding Bible clubs, one permanently and one on a preliminary basis, the Court notes that the results reached by both courts were very

---

**2.** Plaintiff teachers have also claimed a right to pray and read Bible stories in the classroom under article I, section 4, of the Michigan Constitution. Because the Court has concluded that the teachers' practices are barred by the United States Constitution, it need not address the state constitutional issue. U.S. Constitution art. VI.

fact specific. In the *Bender* opinion, the Third Circuit specifically noted that it would have been aided by a more fully developed record. 741 F.2d at 542. In contrast, at this point, the only record of the Bible club practice in this case is the one paragraph of the complaint briefly explaining the practice.

The Court has concluded that it is unable to decide the constitutionality of the Bible club practice in the Allendale schools without the benefit of further factual development. Unlike the issues of prayer and Bible reading in the classroom, no Supreme Court precedent exists clearly on point. Thus, the Court is unable to conclude that plaintiffs, as a matter of law, will be unable to prove any facts that would support their claim for relief.

RIGHTS CLAIMED BY PARENTS

Plaintiff parents claim that defendant Runkel will infringe their liberty interests, protected under the fourteenth amendment, if he prohibits plaintiff teachers from continuing to pray and read the Bible in the classroom and plaintiff students from attending Bible clubs. The Supreme Court has held that the fourteenth amendment protects the "liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *see also Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The liberty interest of parents, however, is not absolute. Rather, the parents' power to direct the upbringing of their children must yield if their actions impinge on other fundamental rights or impair a compelling state interest. 406 U.S. at 223–34, 92 S.Ct. at 1537–42.

In this case, the Court has already held that the establishment clause prohibits prayer and Bible reading in the classroom. Just as the teachers' free speech and free exercise rights must yield to the requirements of the establishment clause under the facts of this case, so the parents' rights to direct their childrens' upbringing are similarly limited. Accordingly, the Court dismisses plaintiff parents' claim that their liberty interests are infringed because their childrens' teachers are not permitted to pray or read the Bible in the classroom.

The Court denies, however, defendant's motion to dismiss the parents' claim that they have a constitutional right to let their children attend Bible clubs that meet on the school premises. The Court is unable to conclude at this time that plaintiffs can prove no set of facts which would entitle them to relief.

IT IS SO ORDERED.

### ORDER

In accordance with the Opinion dated July 25, 1985, IT IS HEREBY ORDERED that defendant's motion to dismiss is GRANTED with respect to plaintiff teachers' claims that they have a constitutional right to pray, read the Bible, and tell stories with a biblical basis in the classroom. Defendant's motion is DENIED with respect to plaintiff students' asserted right to attend Bible clubs. With respect to the claims of plaintiff parents, defendant's motion is GRANTED to the extent those claims are based on a right of teachers to read the Bible and pray in the classrooms, but DENIED to the extent those claims are based on the alleged rights of the students to attend Bible clubs.

IT IS SO ORDERED.