The Honorable Jim Lendall State Representative Post Office Box 55555 Little Rock, AR 72225
Dear Representative Lendall:
This is in response to your request for an opinion on several issues relating to religion in the public schools. Specifically, you have asked for an outline of the law on the most common religion in schools issues, such as Bible reading, Gideon Bible distribution, and use of school facilities for religious meetings during and outside of the school schedule. Additionally, you have asked for an estimate of the cost of defending these types of lawsuits at both the federal district and Eight[h] Circuit levels.
We will respond to your request as completely as this format allows, and will focus on the specific interests of religious entanglement you have mentioned.
The first issue for consideration is the legality of Bible reading in the public schools. This issue was squarely decided in this district in Goodwin v. Cross County School District No. 7,394 F. Supp. 417 (E.D.Ark. 1973). The court there held that the reading of Bible verses and the recitation of the Lord's Prayer over a high school intercom system before the start of daily classes violated the establishment clause of the First Amendment to the United States Constitution. See also, Jaffree v. Board of School Commissioners of Mobile County Alabama, 459 U.S. 1314
(1983); Chamberlin v. Dade County Board of Public Instruction, Fla., 379 U.S. 871 (1964); School District of Abington Tp. Pa. v. Schempp, Pa. 374 U.S. 203 (1963); Engel v. Vitale, 370 U.S. 421
(1962); and Breen v. Runkel, 614 F. Supp. 355 (W.D.Mich. 1985). Additionally, I have enclosed a copy of Opinion 89-063, recently issued by this office, which also reaches this conclusion.
Your next inquiry relates to the distribution of Gideon Bibles on public school grounds. The court in Goodwin, supra, also held this practice violative of the First Amendment establishment clause. See also Tudor v. Board of Education of Borough of Rutherford, 14 N.J. 31, 100 A.2d 857, (1953), cert. denied348 U.S. 816 (1954); and Meltzer v. Board of Public Instruction of Orange County, Fla., 548 F.2d 559 (5th Cir. 1977), reh. 577 F.2d 311
(5th Cir. 1978), cert. denied 439 U.S. 1089 (1979).
Your next question inquires as to the legality of permitting use of school facilities for religious meetings. Two areas of law affect the outcome of this question. One is a line of federal case law which has developed in response to the issue, and the other is federal and state statutory law codified in the form of "equal access acts".
Prior to the enactment of any statutory law on the issue, federal courts were fairly consistent in holding that use of school property for religious meetings violated the First Amendment. In this regard, it has been held that the conduct of school authorities permitting a voluntary student Bible study club to meet on school property DURING SCHOOL HOURS violates the establishment clause, and the prohibition of such activity does not infringe the free exercise of religion. Johnson v. Huntington Beach Union High School District, 137 Cal.Rptr. 43, 68 C.A. 3d 1, (1977), cert. denied, 434 U.S. 877 (1977). See also Collins v. Chandler Unified School District, 644 F.2d 759, (9th Cir. 1981), cert. denied, 454 U.S. 863 (1981). Additionally, it has been held that a policy of the public school authorities permitting the use of public school facilities by students for essentially religious meetings under school supervision OUTSIDE OF THE REGULAR SCHOOL DAY violates the establishment clause, and is not necessary to avoid infringing the free exercise of religion. Lubbock Civil Liberties Union v. Lubbock School District, 669 F.2d 1038 (5th Cir. 1982, reh. denied 680 F.2d 424 (5th Cir. 1982), cert. denied459 U.S. 1155 (1983). See also Brandon v. Board of Education of Guilderland Central School District, 635 F.2d 971 (2nd Cir. 1980), cert. denied 454 U.S. 1123 (1981), reh. denied 455 U.S. 983 (1982).
It has also been held that programs in which regular classes end an hour early one day a week and religious instruction is given in public school classrooms to students who request it are invalid. McCollum v. Board of Education, 333 U.S. 203 (1948). It appears that only one case, Zorach v. Clauson, 343 U.S. 306 (1952), upholds a challenged practice against an establishment clause claim. In Zorach, the Court held that programs in which participating children go to religious classes conducted at religious centers away from the public school do not violate the establishment clause. See also Opinion Nos. 84-198, and 85-133, copies of which are enclosed.
This entire line of case law, however, may be affected by the enactment of the Equal Access Act of 1984, codified at 20 U.S.C. § 4071, et seq. That act provides in pertinent part:
(a) It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.
Arkansas has a very similar act, which is codified at A.C.A.6-21-201, et seq., and applies to STATE funded secondary schools. Both acts prohibit denial of access to students wishing to conduct religious meetings, if an opportunity is provided to other students to conduct other types of extracurricular meetings. Both acts are fairly recent, and as such there is little interpretive case law construing them. It seems, however, that at least some legal commentators doubt the constitutionality of the Equal Access Act of 1984. See Teitel, When Separate is Equal: Why Organized Religious Exercises, Unlike Chess, Do Not Belong in the Public Schools, 81 Nw. U.L. Rev. 174 (1986). See also generally, Strossen, A Constitutional Analysis of the Equal Access Act's Standards Governing Public School Student Religious Meetings, 28 Harv. J. On Legis. 117 (1987), and Crewdson, The Equal Access Act of 1984: Congressional and Free Speech Limits of Establishment Clause in Public Schools. 16 J. Law Educ. 167 (1987). Until the Equal Access Act is adjudged definitively by a court of proper jurisdiction, it remains the law, and operates not only to render legal certain religious meetings on school property, but also requires that such meetings be permitted on an equal basis.
As a final note to this brief outline, let me summarize the state of the law on two other common issues arising in this area. The display of the Ten Commandments on the walls of public school classrooms violates the establishment clause. Stone v. Graham, 449 U.S. 39 (1980). Additionally, the inclusion of a religious invocation and religious benediction as part of a high school graduation ceremony violates thefirst amendment establishment clause. Doe v. Aldine Independent School District 563 F. Supp. 883 (S.D. Tex. 1982); Graham v. Central Community School District of Decatur County, 608 F. Supp. 531 (S.D.Iowa 1985); and Bennett v. Livermore Unified School District, 238 Cal.Rptr. 819, 193 C.A.3d 1012 (1987). But cf. Weist v. Mt. Lebanon School District,457 Pa. 166, 320 A.2d 362 (1974), cert. denied 319 U.S. 967 (1974).*
See also generally, Eckley, Invoking the Presence of God at Public Highschool Graduation Ceremonies: Graham v. Central Community School District, 71 Iowa L. Rev. 1247 (1986)
Prayer in the public schools is also a common litigation-engendering issue. In this regard, it has been held that a statute providing for the offering of a prayer by a student volunteer at the beginning of the school day violates the establishment clause, notwithstanding the fact that students may be excused from such exercises. Kent v. Commissioner of Education, 380 Mass. 235,402 N.E.2d 1340 (1980). Additionally, permitting a teacher to select a volunteer student to lead the prayer, or allowing the teacher to do so, also violates the establishment clause. Karen B. v. Treen, 653 F.2d 897 (5th Cir. 1981) aff'd 455 U.S. 913
(1982).
Moments of silence set aside for meditation or voluntary prayer were also invalidated in Wallace v. Jaffree, 472 U.S. 38 (1985), because the Court found that the only purpose of the statute was to promote religion. Two justices indicated, however, that a law which merely authorized a period of silence, (and which was not overtly or covertly used for the purpose of promoting prayer or religion) might be valid. But cf. May v. Cooperman, 780 F.2d 240
(3rd Cir. 1985), app. dismissed 484 U.S. 72 (1987).
With regard to public school sponsorship of Christmas displays, I have attached a copy of Opinion No. 88-115 for your review.
No review of the law relating to impermissible entanglements with religion on the part of the public schools would be complete without discussing the test applicable to establishment clause challenges set out in Lemon v. Kurtzman, 403 U.S. 602 (1971). In Lemon, the Court adopted a three part test to determine if an establishment clause violation exists. The analysis involves three questions which are as follows: (1) Does the policy or practice have a secular (non-religious) purpose? (2) Is the primary effect of the policy or practice one which neither advances nor inhibits religion? (3) Does the policy or practice avoid an excessive entanglement with religion? If the answer to ALL three questions is "yes," the practice or policy does not impermissibly provide for an establishment of religion and is thus constitutional. See also Opinion No. 84-198, a copy of which is enclosed. This is the test to be applied to all types of religious entanglement issues in the public schools.
In response to your request for an estimate of the cost of defending an establishment clause challenge, I regret that a specific answer to this question, in the form of a numerical figure, may not be arrived at without more specific information about each particular case. The cost of such litigation may vary greatly depending upon any number of factors. As you can imagine, however, the cost to an individual school district, especially a small one, is not insignificant.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
NOTE: All the other opinions referred to (84-198, 85-133, 88-115, and 89-063) are in their respective computer "file folders".
* It should be noted that this issue was also before the District for the Eastern District of Arkansas in Goodwin, supra. The court, however, failed to reach a legal conclusion on this question, as it found as a factual matter that the plaintiff had failed to meet its burden of proof on the issue.