Ronald KUBIK and Diann Kubik, Plaintiffs,

v.

Clark A. BROWN, Tim Baker, and The Michigan Department of State Police, Defendants.

No. 1:96 CV 848.

United States District Court, W.D. Michigan, Southern Division.

July 29, 1997.

---

Peter H. Shumar, Gray, Ford & Seaman, PC, Traverse City, MI, for plaintiffs.

Margaret A. Nelson, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Tort Defense Div., Lansing, MI, for defendants.

### OPINION

QUIST, District Judge.

This matter is before the Court on the Motion by defendants Clark A. Brown, Tim Baker and the Michigan Department of State Police to Dismiss, or alternatively, for Summary Judgment (Dkt.# 6). For the reasons stated below, the Defendants' Motion is granted.

As a preliminary matter, the Court must address documents which have been submitted in support of Defendants' Motion. The plaintiffs' claims primarily are based on the arrest of plaintiff Ron Kubik. In support of their motion, the defendants have submitted several police reports. Although the admissibility of the police reports was not raised by the plaintiffs, their admissibility must be addressed by the Court in order to determine what evidence will be considered.

In support of their motion, the defendants have submitted the following police reports relating to the October 24, 1994 incident:

(1) Original Incident Report for Incident No. 071–3329–94, dated October 24, 1994;

(2) Supplemental Incident Report dated 10–28–94;

(3) Supplemental Incident Report dated 11–3–94; and

(4) Supplemental Incident Report dated 12–21–94.

A copy of the related Warrant or Disposition Request and LEIN Report, as well as a Standard Crime Report for Incident No. 176383 dated August 8, 1983 and accompanying Case Supervision sheet from the City of Brighton, Michigan Police Department have been submitted. All of the foregoing documents are in Defendants' Group Exhibit 1.

 Statements of a victim, alleged perpetrator, witnesses and even the prosecutor contained within a police report constitute inadmissible hearsay. *Miller v. Field,* 35 F.3d 1088, 1091–92 (6th Cir.1994). Police reports may qualify as records or reports of a public agency pursuant to F.R.E. 803(8)[1] to the extent that the reports contain factual findings which are based upon the knowledge or observation of the person preparing the reports. *Miller,* 35 F.3d at 1091. Under F.R.E. 803(8), the reporting person's legal duty supplies the indicia of trustworthiness which allows admission of the report. *See Miller v. Caterpillar Tractor Co.,* 697 F.2d 141, 142–43 (6th Cir.1983) (hereinafter *Caterpillar* ). However, factual findings based on inadmissible hearsay are not admissible under Rule 803(C) because the underlying information is untrustworthy. *Complaint of Paducah Towing Co., Inc. (United States v.*

*Paducah Towing Co., Inc.),* 692 F.2d 412, 420–21 (6th Cir.1982); *Caterpillar,* 697 F.2d at 144 (district court did not abuse its discretion in refusing to admit as "untrustworthy" a police report based on the statements of witnesses).

In the present case, the Original Incident Report and subsequent Supplemental Reports relating to Ron Kubik's arrest in October 1994, are based in large part on Diann Kubik's statements to Brown. The report also includes Brown's own observations. The Court will consider those reports to the extent that they reflect Brown's own observations and conclusions based on *his* personal observations. However, statements regarding events or conversations outside of Brown's presence which Diann Kubik and others made to Brown will not be considered.[2]

 The August 1988 reports from the City of Brighton Police department and accompanying documentation (Brighton Reports) are not admissible because they consist largely of hearsay and because they are not relevant. Those reports refer to an incident between the Kubiks in 1983. The reports appear to have been delivered to Brown on or about November 8, 1994, and accordingly, did not serve as any arguable basis for probable cause in Kubik's October 25, 1994, arrest. Furthermore, even though the Brighton Reports contain officers' observations, those reports have no factual bearing on the issues before this Court. Therefore, those reports are not admissible pursuant to F.R.E. 401 and 402.

## BACKGROUND

The Amended Complaint alleges that on October 24, 1994, Officer Clark Brown responded to a call regarding a domestic dis-

---

1. F.R.E. 803(8) provides:

 (8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the officer or agency, or (B) matters observed pursuant to duty imposed by law as to which matter there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

2. Although statements set forth in the reports could be considered for their effect on Brown in determining whether there was probable cause for Kubik's arrest, it is unnecessary for the Court to consider the reports in resolving the Fourth Amendment and state law claims.

pute between the plaintiffs, Ron and Diann Kubik. As part of his investigation, Brown interviewed Diann Kubik at the home of her friend for approximately four hours. It is alleged that during the interview, Brown asked Diann Kubik questions regarding her relationship with her husband, Ron Kubik, any history of abuse, her attendance at church, and Ron Kubik's alleged refusal to allow their children to attend parochial school because Ron Kubik is an atheist. At the time of the interview, both Diann Kubik and Defendant Brown were members of Trinity Lutheran Church (Trinity), where Brown served as an elder. Trinity operated the parochial school which the Kubik children previously had attended. The complaint alleges that Brown inquired as to whether Diann Kubik had asked God for forgiveness. He told her that as an elder of the Church, he could absolve her of her sins. Brown also tried to contact their Pastor prior to and during the interview, but he was not successful. Brown also allegedly made comments to the effect that he knew of persons who would wish to date Diann Kubik should she divorce her husband, and Brown provided her with information on obtaining a divorce. It is undisputed that Diann Kubik told Brown that she did not want Ron Kubik to be arrested.

During the interview, Ron Kubik telephoned the friend's residence and spoke with Brown. Brown then went to the Kubik home to speak with Ron Kubik in person. Subsequently, Diann Kubik and the Kubik children returned to the home, accompanied by Brown. Later that evening, Brown telephoned Diann Kubik to inquire as to whether everything was fine. The complaint alleges that when Brown made that call, he learned that Ron Kubik remained at the house.

The following day, Brown telephoned Diann Kubik to tell her that a warrant had been issued for her husband's arrest. Later that day, Ron Kubik was arrested at the Kubik family home on a charge of spousal assault and battery pursuant to a warrant obtained by the Grand Traverse County prosecutor. Ron Kubik was released on bond on the condition that he not have contact with Diann Kubik. That condition was later amended to prohibit contact with their children. Ron Kubik eventually pled guilty to the charge of assault and battery, and he was placed on probation. His probation conditions required that he and Diann Kubik continue in counseling, which they had been undertaking prior to the incident on October 24, 1994.

The complaint alleges that during an unspecified time following Ron Kubik's arrest, Brown contacted Diann Kubik on several occasions. According to the Complaint, he inquired about whether she would be attending church and whether she needed a "wake up call," and he indicated to her that she was the subject of prayers. Brown also invited Diann Kubik and her children to dinner on two occasions. He encouraged her to divorce Ron Kubik and told her, among other things, that she could be charged with neglect for allowing her children to witness the violence between her and Ron Kubik. The complaint also alleges that Brown informed Diann Kubik that she would likely keep the house and custody of her children if she divorced her husband.

Ron Kubik contends that he was arrested because he is an atheist. The complaint alleges that it is the plaintiffs' belief that the Michigan State Police usually do not seek an arrest in domestic violence cases involving "minor" violence. Ron Kubik alleges that he only threw Diann Kubik's purse at her. The complaint alleges that the defendants engaged in conduct which violated the plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Article 1, Sections 2, 4, 11, 16, 17, and 23 of the Michigan Constitution of 1963, as well as M.C.LA. § 37.2101 (the Elliott–Larsen Civil Rights Act). The complaint seeks compensatory and punitive damages from the defendants. Eighth Amendment claims made in the original complaint have been omitted from the Amended Complaint, and the defendants' contention that the complaint should be dismissed for failure to comply with Fed.R.Civ.P. 10(a) was previously disposed of pursuant to Magistrate Judge Rowland's March 31, 1997 Opinion and Order (Dkt. # s 32 & 33).

The defendants filed a Motion to Dismiss or alternatively, for Summary Judgment on December 6, 1996 (Dkt.# 6). Although the plaintiffs filed an Amended Complaint on February 7, 1997, the parties have proceeded on the defendants' motion as being applicable to the Amended Complaint. The Motion contends that the defendants are entitled to dismissal or summary judgment because a) the Michigan State Police are immune from suit, b) the complaint fails to state a claim as to the Federal Constitutional claims, c) Brown is entitled to qualified immunity, and d) the plaintiffs have failed to state any state law claims.

Because the Court has concluded that it may consider certain portions of the police reports, the following information also may be considered with respect to the Motion for Summary Judgment. First, Brown's initial observation of Diann Kubik was that she had a slight reddening of her left cheek with very faint fingerprints visible. Those marks faded during the interview. Diann Kubik also showed Brown a bruise on her upper left arm. No other injuries were visible to Brown. During the interview, Brown called the Women's Resource Center because he believed that Diann Kubik was dependent on her alleged abuser, but no counselor was available. Brown stated in the police report that he had concluded from speaking with Diann Kubik that "she had begun to believe unflattering statements made by her husband." He noted in his report that she was "1) Articulate; 2) Well mannered; 3) Educated; and 4) Attractive by commonly assumed norms."

Second, when Ron Kubik called the residence at which the interview was being conducted, according to Brown's report, Brown requested whether he could converse with Ron Kubik at their home. Ron Kubik agreed, and Brown went to the Kubik home where he met Kubik in the garage. They continued their conversation in the house after Ron Kubik invited Brown inside. Brown reported that Ron Kubik admitted to statements made by Diann Kubik, but that he justified his actions to Brown by describing Diann Kubik as "Mentally ill; Bi-polar disorder; Nymphomaniac; and several other qualifiers." After speaking with Ron Kubik, Brown returned to the home where Diann Kubik had been staying.

Subsequently, Ron Kubik called the house again and spoke to Diann Kubik. She was observed by Brown to be alarmed, and she stated that she had to leave to return to the Kubik home. However, she requested that Brown accompany her, which he did. In Brown's presence, Ron Kubik went on a "verbal tirade." He shouted at Diann Kubik, telling her that she was "out of her mind, crazy and a liar." He further told her that she was "messed up" and their counselor could no longer work with her. Brown stated that Ron Kubik told Diann she was "messed up" from an abnormal childhood, during which her mother had committed sexual acts in the presence of Diann and her siblings. Brown further observed that Diann Kubik maintained her composure during the tirade and responded only by saying that the accusations were Ron Kubik's beliefs, not facts.

During the joint conference, Ron Kubik offered to leave the residence and not return. He further stated that the house would be sold and divorce sought. Brown subsequently left with the understanding that Ron Kubik would depart shortly.

After Brown returned to his home that evening, he called Diann Kubik to assure that there had been no further violence. Ron Kubik was still present, but Diann Kubik informed Brown that Ron Kubik needed only to pack some clothes and he would be leaving shortly.

The following day, Brown called Diann Kubik at her employment. At that time, she informed Brown that Ron Kubik had returned to their home. Brown visited Diann Kubik at work and photographed the bruise on her arm. Brown then forwarded a copy of his report to Assistant Prosecutor Lynne Buday for consideration and "possible authorization of charges against suspect for Spouse Abuse." Incident reports subsequent to Kubik's arrest indicate that on October 28, 1994, Brown requested that the prosecutor consider a review of Ron Kubik's bond conditions to prevent Ron Kubik from being at the family residence.

Finally, the supplemental incident report dated November 3, 1994, indicates that Diann Kubik went to the Traverse City Post and discussed certain aspects of Brown's written report with him. According to Brown's supplemental report, most of Diann Kubik's concerns related to his characterizations of prior incidents between her and Ron Kubik, which she had related to Brown during the initial interview. There is no mention in Brown's supplemental report that Diann Kubik made any reference to religion or related subjects.

## MOTION FOR SUMMARY JUDGMENT

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view "inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact" [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Id.*

at 993 (quoting *Matsushita Electric In. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and heartily supported, Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Courts have noted that the summary judgment motion may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 327, 106 S.Ct. at 2554). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512. Mere allegations do not suffice. *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## A. FEDERAL CLAIMS

### 1. Eleventh Amendment Immunity

The plaintiffs state that they have dropped all claims against the Michigan Department of State Police. However, the Amended Complaint names as defendants Trooper Clark A. Brown and Captain Tim Baker in their official capacities. It is unclear whether that was an oversight in preparation of the Amended Complaint. In any event, the defendants correctly contend that this Court has no jurisdiction against them in their official capacities. The Eleventh Amendment to the United States Constitution bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 20, 10 S.Ct. 504, 509, 33 L.Ed. 842 (1890); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). A suit against a state or its officials contravenes the Eleventh

Amendment irrespective of the suit being based upon federal or state law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. at 119–21, 104 S.Ct. at 918–19; *see also Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982). This jurisdictional bar applies regardless of the nature of the relief sought. *Id.* at 100, 102 S.Ct. at 2334. The State of Michigan thus has immunity from civil actions by private plaintiffs unless the state has waived its immunity, or Congress has by statute expressly abrogated the Eleventh Amendment immunity. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). Michigan has not consented to suit, *Karchefske v. Department of Mental Health,* 143 Mich.App. 1, 371 N.W.2d 876 (1985); *Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641 (1984), and Congress has not expressly abrogated Eleventh Amendment immunity from § 1983 lawsuits. *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

■■■ Immunity under the Eleventh Amendment extends to state agencies or departments that function as arms of the state. *Alabama v. Pugh,* 438 U.S. at 782, 98 S.Ct. 3057–58; *Ohio v. Madeline Marie Nursing Homes 1 and 2,* 694 F.2d 449, 458 (6th Cir.1982). The Michigan Department of State Police is a department of the State of Michigan, and therefore is entitled to immunity. Because the Michigan Department of State Police is immune from liability in this suit, the defendants in their official capacities also are immune from suit. Accordingly, all claims must be dismissed against the defendants in their official capacities.

### 2. *Respondeat Superior* Liability

#### a. *Supervisory Liability*

■■■ The defendants contend that any claim against Defendant Baker is premised solely on a *respondeat superior* theory of liability. However, it has long been an established principle of § 1983 jurisprudence that liability may not be premised upon a *respondeat superior* theory of liability. *See Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct.

598, 606, 46 L.Ed.2d 561 (1976); *Monell v. Department of Soc. Serv's,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). To prevail in a § 1983 suit, a plaintiff must make a "showing of direct responsibility for the actions of the individual officers." *Hays v. Jefferson County,* 668 F.2d 869, 873 (6th Cir.1982). "The mere failure to act [even] in the face of a statistical pattern of incidents of misconduct [is] insufficient to base liability on." *Id.* at 873–74, (quoting *Rizzo v. Goode,* 423 U.S. at 376, 96 S.Ct. at 606). The burden is on the plaintiff to show an affirmative link between the alleged constitutional violation and actions by defendants which caused the alleged violation. *Rizzo v. Goode,* 423 U.S. at 371, 96 S.Ct. at 605. As the Sixth Circuit has repeatedly held:

> a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County,* 668 F.2d at 874; *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984); *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988); *Weaver v. Toombs,* 756 F.Supp. 335, 337 (W.D.Mich.1989), *aff'd,* 915 F.2d 1574 (6th Cir.1990). The mere fact that defendants occupied a position of authority, or that they may have been aware of illegal conduct by subordinates after the fact, does not justify the imposition of § 1983 liability. *Poe v. Haydon,* 853 F.2d at 429; *Weaver v. Toombs,* 756 F.Supp. at 337.

The present complaint alleges that Baker was Brown's superior and that Baker had responsibility for hiring, disciplining, investigating, instructing, training and supervision of Brown. (¶¶ 6, 7.) The Complaint further alleges that Defendant Baker "knew, or should have known of the vicious propensities of Trooper Brown to act outside the scope of his authority in pursuit of whatever he believed his church agenda was at the time, which would violate the civil rights of the

citizens of the State of Michigan....:" (¶ 66.) According to the complaint, the State Police have no written policies or little or no training concerning the "use" of religion by officers. (¶¶ 67, 68.) Baker allegedly did not review "any reports of Defendant Brown with regard to the alleged incident and/or monitor his conduct in any way, despite the fact that, on information and belief, he knew or should have known, Defendant Brown had other complaints against him as a police person with private citizens similarly situated as Plaintiff before, did not ensure that all of Defendant Brown's reports be reviewed before the filing of charges, and not requiring and/or enforcing constant supervision of the same." (¶ 69.) The Kubiks claim their injuries resulted from the failure to train, supervise and/or discipline Brown as to the use of religion with regard to arrest. (¶ 70, 71.)

█ A plaintiff may seek to impose liability against a supervisor in his individual capacity where it is found that the supervisor had personal involvement in the incidents which caused the alleged constitutional deprivation. However, no allegation or evidence submitted to the Court supports the plaintiffs' claim against Baker. The allegation that Baker "should have known of the vicious propensities of Trooper Brown" is simply conclusory. Although paragraph 69 alleges that Baker did not review Brown's reports relating to the October 24, 1994 incident, there is no indication of how a review of those reports would have *prevented* the alleged injury to the plaintiffs. Finally, Baker contends that, contrary to the Kubiks' assertions, he is not Brown's supervising officer. (*See* Defendants' Reply Brief at pp. 5–6.) The plaintiffs have presented no evidence to refute Baker's contention, nor have they followed this Court's order by advising the Court of any further discovery they need to defeat that contention. *See* Docket No. 34. Because the plaintiffs have failed to show that Baker had personal involvement in the alleged incident, that he knew of and ignored other, specific incidents involving Brown, or even that Baker, in fact, is Brown's supervisor, Baker is entitled to summary judgment on the supervisory liability claim.

### b. *Failure to Train*

The plaintiffs also have brought a claim against Baker in his individual capacity for "failure to train" Brown properly regarding the "use" of religion in his work. The Supreme Court has held a municipality may be held liable where its failure to provide training to its employees results in a constitutional deprivation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). However, liability arises "[o]nly where a failure to train reflects a "deliberate" or "conscious" choice amounting to municipal "policy." *Id.* Additionally, a particular officer's unsatisfactory performance will not alone be indicative of a failure to receive adequate training:

> It may be, for example, that an otherwise sound program has been occasionally negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable.

*Canton,* 489 U.S. at 390–91, 109 S.Ct. at 1206 (citations omitted).

█ Whether an officer's training was the best or most comprehensive available has no bearing on the plaintiff's failure to train claim. *Vine v. County of Ingham,* 884 F.Supp. 1153, 1159–60 (W.D.Mich.1995), citing *Lewis v. City of Irvine,* 899 F.2d 451, 455 (6th Cir.1990). The plaintiff must prove that the training program is inadequate with respect to the specific task to be performed. *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994); *Hudson v. Maxey,* 856 F.Supp. 1223, 1228–29 (E.D.Mi.1994).

█ A claim for failure to train, in essence, is a claim against the employing mu-

nicipality. The State may have a duty to protect its citizens from constitutional violations by its officers. *See Breen v. Runkel,* 614 F.Supp. 355, 358 (W.D.Mich.1985) (explaining duty on Superintendent of Public Instruction to ensure that individual teachers do not violate the Establishment Clause). However, the State is not subject to suit in Federal Court for such a violation. Although the plaintiffs attempt to bring this claim against Baker in his individual capacity, it must fail for the reasons stated above with respect to supervisory liability. Accordingly, Baker is entitled to summary judgment.

### 3. Collateral Estoppel

The plaintiffs contend that Brown sought Kubik's arrest because Brown did not agree with Kubik's atheism and because Kubik had removed his children from the parochial school run by Trinity Lutheran Church, where Brown is an elder.

The misdemeanor complaint filed against Kubik in the state court case, *People of the State of Michigan v. Ronald James Kubik,* No. 944300 SM, charged Kubik with spousal assault and battery on Diann Lynn Kubik pursuant to M.C.L. 750.81(2); M.S.A. 28.6.276 [750.812]. On November 30, 1994, Kubik pled guilty to assault and battery. Kubik was represented by counsel at the time he pled guilty and at his sentencing. He was sentenced on January 24, 1995 to 730 days probation. The "no contact order" was lifted, but one condition of Kubik's probation was that he continue in counseling with his wife.

■■■ The Supreme Court has held that principles of collateral estoppel prevent the litigation of issues in a § 1983 case that could have been raised in the plaintiff's underlying state court conviction. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Application of collateral estoppel depends on whether the plaintiff had the *opportunity* to fully and fairly litigate the issue in state court. *Allen,* 449 U.S. at 94–95, 101 S.Ct. at 414–15. Accordingly, the Sixth Circuit has held that a guilty plea or conviction will preclude a plaintiff from subsequently bringing a § 1983 claim based upon lack of probable cause or malicious

prosecution. *Walker v. Schaeffer,* 854 F.2d 138, 142–43 (6th Cir.1988); *see also, Pete v. Metcalfe,* 8 F.3d 214, 218–19 (5th Cir.1993); *Guenther v. Holmgreen,* 738 F.2d 879, 884–85 (7th Cir.1984), *Roundtree v. City of New York,* 778 F.Supp. 614, 618–19 (E.D.N.Y. 1991). In another context, the Supreme Court also has stated that where there is a valid conviction, the courts will not look to the motive of the arresting officer. *Whren v. United States,* 517 U.S. 806, ——, 116 S.Ct. 1769, 1773, 135 L.Ed.2d 89 (1996). "The actual existence of probable cause is an absolute bar to a § 1983 action regardless of whether the arresting officer acted maliciously or in bad faith." *Bootz v. Childs,* 627 F.Supp. 94, 102 (N.D.Ill.1985)(citing *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980)) (where probable cause exists, "allegedly malicious motives are immaterial").

■■■ Ron Kubik alleges he was arrested because he is an atheist and that his arrest and prosecution violated his Fourth and Fourteenth Amendment rights. He also claims malicious prosecution, false arrest and selective prosecution. However, Kubik had the opportunity to litigate those issues in his state court proceeding. Instead, he chose to plead guilty to the assault and battery upon Diann Kubik. Ron Kubik might not necessarily have been estopped from raising these claims had he filed them in state court because Michigan law usually requires mutuality of parties in order for collateral estoppel to apply. *See, Lichon v. American Universal Insurance Co.,* 435 Mich. 408, 459 N.W.2d 288, 298–99 (1990) (despite his arson conviction following a *nolo contendre* plea, building owner could sustain bad-faith action against insurer for refusal to pay). However, collateral estoppel is a procedural bar, and federal authority does not require mutuality where it is raised as a defense. *Allen,* 449 U.S. at 94, 101 S.Ct. at 414–15. Therefore, Ron Kubik is barred by principles of collateral estoppel from litigating the issue of whether Brown's motivation violated his constitutional rights and/or claims for malicious and selective prosecution, false imprisonment and false arrest.

#### 4. Fourteenth Amendment

##### a. *Equal Protection*

Diann and Ron Kubik claim that the defendants' actions denied them of equal protection of the law in violation of the Fourteenth Amendment. The purpose of the Equal Protection Clause is to assure that similarly situated individuals will be treated alike. *Gwinn Area Comm. Sch. v. Michigan,* 574 F.Supp. 736, 749 (W.D.Mich.1983), *aff'd in part, rev'd in part,* 741 F.2d 840 (6th Cir.1984). In order to establish an equal protection violation, Plaintiffs must allege or prove discriminatory intent or purpose. *Washington v. Davis,* 426 U.S. 229, 239–42, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597 (1976). A civil rights plaintiff must make specific allegations of facts which indicate a deprivation of rights. *Chapman v. City of Detroit,* 808 F.2d 459 (6th Cir.1986); *Blackburn v. Fisk Univ.,* 443 F.2d 121 (6th Cir. 1971); *Weaver v. Toombs,* 756 F.Supp. 335 (W.D.Mich.1989), *aff'd,* 915 F.2d 1574 (6th Cir.1990).

The record demonstrates that for the reasons stated above, Ron Kubik is collaterally estopped from bringing a Fourteenth Amendment claim based on his arrest and prosecution. However, assuming Ron Kubik was not barred from bringing a Fourteenth Amendment claim on grounds of collateral estoppel, the plaintiffs' equal protection claim is without merit. Plaintiffs have not set forth sufficient allegations for this Court to conclude that Brown's contacts with plaintiffs deprived them of a constitutional right. It appears that neither the language nor purpose of the equal protection clause is implicated in this case. The complaint lacks the type of specific, concrete allegation that case law requires in order to sustain a claim of constitutional dimension. The Court concludes, therefore, that the equal protection claim must be denied.

##### b. *Liberty Interest* [3]

As with their equal protection claim, the Kubiks allege that Brown attempted to facili-

tate their divorce and to precipitate church attendance by Diann Kubik and her children. The complaint also alleges that Brown, while acting in his capacity as a Michigan State Police Officer, attempted to interfere with the upbringing of the Kubik children and the Kubiks' marriage for constitutionally impermissible reasons.

The Supreme Court has held that the Fourteenth Amendment protects the freedom of parents and guardians to direct the upbringing and education of their children. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Breen v. Runkel,* 614 F.Supp. 355, 361 (W.D.Mich.1985). The rights of persons in family matters, including marriage, are protected fundamental rights. *Wright v. Metro-Health Medical Center,* 58 F.3d 1130, 1134–35 (6th Cir.1995). However, a threshold question in liberty interest analysis is whether there even exists a liberty interest with which the defendant has interfered. *Codd v. Brown,* 949 F.2d 879, 881–82 (6th Cir.1991). Protected liberty interests must rise to more than " 'an abstract need or desire.' " *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)). A mere expectation of due process does not create a protectible interest. *Olim v. Wakinekona,* 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 1748 n. 12, 75 L.Ed.2d 813 (1983)); *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir. 1993).

Assuming that a liberty interest is even at stake in this case, the plaintiffs' liberty interest was not violated under the facts before the Court. Ron Kubik's claim cannot rely on his arrest, prosecution or incarceration, and Brown's allegedly improper conversations and contact with Diann Kubik and the Kubik children fail to rise to the level of a constitutional violation. Brown's conduct, at worst, involved broaching subjects only marginally related with the actual arrest of Ron Kubik. There is no authority that such conduct violates plaintiffs' liberty interest under the Fourteenth Amendment.

---

**3.** The plaintiffs have alleged a violation of their Fifth Amendment rights, but they do not allege any particular claim. The Court finds that any Fifth Amendment claim would be duplicative of the plaintiffs' Fourteenth Amendment claims.

Therefore, the Court finds that Plaintiffs' complaint fails to state a claim for deprivation of a liberty interest.

### 5. First Amendment

#### a. Establishment Clause

 The Kubiks have alleged that Brown's conduct violated their rights under the First Amendment, although the complaint is not particularly clear as to the contour of the specific rights at issue. The First Amendment prohibits government disapproval of a religion or religion in general. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993). For purposes of the First Amendment, atheism is considered as a religious belief or tenet, and neutrality between religion and non-religion is required. *See Lukumi Babalu Aye*, 508 U.S. at 531, 113 S.Ct. at 2226; *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); *Hartmann v. Stone*, 68 F.3d 973, 978 (6th Cir.1995). Although persons employed by the State retain a First Amendment right of free speech, "if exercise of that right materially and substantially interferes with the requirements of [the state employee's employment] or collides with the rights of others," that free speech right may also be limited. *Breen*, 614 F.Supp. at 359. The restrictions of the Establishment Clause under the First Amendment outweigh the free speech or free exercise claims that could be asserted by government employees. *Breen*, 614 F.Supp. at 360.

In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court articulated the test to determine the constitutionality of governmental actions under the Establishment Clause. To pass constitutional muster, the challenged action must (1) have a secular purpose; (2) have a primary effect which neither advances nor inhibits religion; and (3) not foster excess state entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111. All three prongs of the *Lemon* analysis must be met in order for the governmental action to be constitutional. *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). "[W]hen there are both

religious and legitimate, sincere secular purposes motivating [governmental action], it appears that the existence of the secular purposes will satisfy the first *Lemon* prong." *Lynch v. Donnelly*, 465 U.S. 668, 680, 104 S.Ct. 1355, 1363, 79 L.Ed.2d 604 (1984).

 A review of the record in this case demonstrates that defendant Brown's conduct did not "run afoul of any of [the] three primary criteria [we] currently use to evaluate" whether government action has the effect of impermissibly advancing or inhibiting religion. *Agostini v. Felton*, —— U.S. ——, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Based upon the admissible facts and allegations before the Court, defendant Brown was carrying out police duties when he initially inquired as to the Kubiks' history of marital problems. The only documented post-arrest discussion appears to have been to discuss the investigation report of the incident in question, and that appears to have been initiated by Diann Kubik. The other alleged phone calls, wherein Brown inquired as to whether Diann Kubik and her children would be attending church, are not documented in the police reports and there is no evidence that Brown was acting as a police officer when he made those calls. Under the *Lemon* test, recently applied by the Supreme Court in *Agostini*, defendant Brown's conduct fell well within the parameters of the Constitution. The primary effect of his official contacts with Diann Kubik was related to the secular purpose of an arrest, not to religion. In addition, the Court finds there was no excessive state entanglement in private affairs. The secular nature of Brown's conduct as a police officer is self-evident. The fact that Brown addressed issues of religion or private affairs with Diann Kubik is, at most, irrelevant, and at worst, an indication of poor judgment. Accordingly, the Court finds that plaintiffs' complaint has not stated a claim for a violation of the Establishment Clause of the First Amendment.

#### b. Freedom of Exercise

Ron Kubik is collaterally estopped from arguing that his arrest and prosecution were impermissibly effected because of his beliefs, and he alleges no other instance in which he

was punished or prosecuted for his beliefs. Collateral estoppel also prohibits Kubik from challenging the conditions of his bond. Kubik's argument must further fail because the Circuit Court Judge ordered that Kubik have no contact with his wife or family while he was on bond. There is no allegation that either the prosecutor or the judge, neither of whom is a party to this lawsuit, acted improperly. *See Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (whether to bring and prosecute charges is left to the discretion of the government). Brown's advice that Diann Kubik divorce Ron Kubik does not necessarily support the claim that Brown attempted to interfere with Ron Kubik's religious beliefs. Because Ron Kubik is collaterally estopped from arguing that he was arrested and prosecuted due to his religious beliefs, and there is no evidence or allegation supporting Ron Kubik's free exercise claim, defendants are entitled to summary judgment.

 Freedom to exercise religion also would encompass the freedom to *not* exercise. The complaint alleges that Brown encouraged Diann Kubik to attend church and that he encouraged her to divorce Ron Kubik because of his beliefs. Brown and Diann Kubik knew each as fellow church members before Ron Kubik assaulted Diann Kubik. However, there is no allegation that Diann Kubik was forced or coerced in any manner regarding any religious expression or act. The extent of Brown's encouragement, in fact, is not even alleged. As a result, Diann Kubik's free exercise claim must fail, and summary judgment for defendants must be granted.

### 6. Qualified Immunity

 Government officials have qualified immunity from liability for damages arising out of their discretionary official functions as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once a defendant offers the defense of qualified immunity, the burden of persuasion regarding that issue is on the plaintiff. *Montoute v. Carr,* 114 F.3d 181, 183 (11th Cir.1997); *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992). Defendants are entitled to qualified immunity if " 'a reasonable officer could have believed [the arrest] to be lawful in light of clearly established law and the information the [arresting] officers possessed.' " *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)).

 For the law to be clearly established for purposes of qualified immunity, "the law must be clear in regard to the official's particular actions in the particular situation." *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991), *cert. denied,* 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991), as quoted in *Saylor v. Board of Education of Harlan County,* 118 F.3d 507 (6th Cir.1997). "[T]he law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Pre-existing law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Saylor v. Board of Education of Harlan County,* 118 F.3d 507 (6th Cir.1997)(quoting *Lassiter,* 28 F.3d at 1150). "Here a mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit." *Ohio Civil Serv. Ass'n v. Seiter,* 858 F.2d 1171, 1177–78 (6th Cir.1988). A single idiosyncratic opinion from another circuit's court of appeal is insufficient to put a defendant on notice where the Sixth Circuit might come out on the question. *Davis v. Holly,* 835 F.2d 1175, 1182 (6th Cir.1987).

 To defeat the claim of qualified immunity, plaintiffs must establish that under the circumstances, no reasonable officer

could have believed that defendant Brown's conduct fell within the parameters of federal law. *Montoute,* 114 F.3d at 185–86. Also, conclusory assertions, even those put forth in a verified complaint, "are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 343 (6th Cir.1993). Moreover, in the specific context of arrests, the doctrine of qualified immunity provides broad protection. *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996). To survive a summary judgment motion, plaintiff must "designate specific facts demonstrating that [defendants] acted unreasonably" in effectuating the arrest. *Smith v. Freland,* 954 F.2d 343, 345 (6th Cir.1992). Moreover, the Supreme Court has warned that a finding of liability may not hinge upon expansive legal truisms, and that courts may not ignore material factual differences between present cases and precedent establishing the asserted constitutional right. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. As one court has stated, "[g]eneral propositions have little to do with ... qualified immunity." *Muhammad v. Wainwright,* 839 F.2d 1422, 1424 (11th Cir.1987). "Thus, qualified immunity applies where the plaintiff can identify only unworkable abstractions from prior case law and cannot show how those principles would be applied later to different facts." *Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 829 (11th Cir.1997).

Thus, this Court's obligation is limited to deciding the narrow legal issue of qualified immunity in light of binding precedent. Even assuming that Diann Kubik has asserted a violation of a constitutional right, qualified immunity is applicable. Plaintiffs have failed to demonstrate that prior case law provided fair warning to Brown that his injection of marginally relevant topics of religion in his dealings with Diann Kubik would render him liable for violation of federal law. In fact, this Court has not been directed to and has not seen precedent even remotely on

point given the facts in this case, much less clearly established precedent that notified Brown he was a violator of the Constitution. *Cf. Doe v. Phillips,* 81 F.3d 1204 (2d Cir. 1996) (Section 1983 action in which prosecutor's claim for immunity was denied after he demanded that the plaintiff swear to her innocence on a Bible in church as a condition of dropping charges of sexual abuse against her). Applying the law to the facts in this case dictates that defendant Brown is entitled to qualified immunity and therefore summary judgment on plaintiffs' claims. (Because Baker is entitled to summary judgment on the substantive issues, the Court need not determine whether he is entitled to qualified immunity.)

## B. STATE LAW CLAIMS

### 1. Immunity

Defendants Brown and Baker contend that as governmental employees they are immune from tort liability. They further contend that to the extent that there is an exception where gross negligence has been alleged, neither plaintiffs' complaint nor the exigent facts sustain a finding of conduct rising to the level of gross negligence necessary to sustain a cause of action and avoidance of immunity.[4]

Under Michigan law, governmental employees generally are immune from tort liability unless their conduct has arisen to the level of gross negligence. M.C.L. 691.1407, M.S.A. 3.996(107). However, there is no *per se* exception to governmental immunity with respect to lower level employees for intentional torts. *See Smith v. Department of Public Health,* 428 Mich. 540, 610–11, 410 N.W.2d 749, 780 (1987), *affirmed sub. nom. Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As stated by the court in *Chivas v. Koehler,* 182 Mich.App. 467, 472, 453 N.W.2d 264, 266 (1990),

4. The Michigan Department of State Police and the Officers in their official capacities are immune from tort liability as set forth by statute. M.C.L. 691.1407; M.S.A. 3.996(107). The plaintiffs conceded that they are not bringing any claim or cause of action against the Michigan Department of State Police. Therefore, the Court need not analyze immunity as to the particular claims which have been alleged with respect to the defendants in their official capacities.

Lower level officials, employees and agents are immune from tort liability only when they are

1) Acting during the course of their employment and acting, or reasonably believe that they are acting, within the scope of their authority;

2) Acting in good faith; and

3) Performing discretionary, as opposed to ministerial acts.

*Chivas,* 182 Mich.App. at 472, 453 N.W.2d at 266 (quoting *Ross v. Consumers Power Co.,* 420 Mich. 567, 633–34, 363 N.W.2d 641, 667–68 (1984)). A discretionary act is one which requires personal deliberation, decision and judgment and involves significant decision making on whether to engage in a particular activity and how best to carry it out. *Chivas,* 182 Mich.App. at 472, 453 N.W.2d at 267. "In determining whether acts are discretionary or ministerial, we must look to the specific acts complained of, rather than to the general nature of the activity." *Chivas,* 182 Mich.App. at 472, 453 N.W.2d at 267 (citing *Canon v. Thumudo,* 430 Mich. 326, 334, 422 N.W.2d 688, 691 (1988)).

### a. *Defendant Baker*

In the instant case there is no evidence that Baker acted outside the course of his employment. All of the claims which have been made against Baker have been made against Baker for failure to train and/or supervise Defendant Brown. Those claims clearly involve activities which would have been in the scope of Baker's employment. Secondly, there is no evidence that Baker did not act in good faith. Additionally, the Court also has found that the plaintiffs failed to show that Baker actually was Brown's supervisor. To the extent that Baker may have been a supervisor or in a supervisory position relating to Brown, clearly supervisory activities would be a discretionary, not ministerial, function. The plaintiffs' complaint fails to allege and the plaintiffs have presented no evidence or proposed discovery facts which could negate potential immunity for Defendant Baker. Therefore, the Court finds that Baker is entitled to immunity under Michigan law as to all the plaintiffs' state law tort claims.

### b. *Defendant Brown*

With respect to Defendant Clark Brown, the Court also finds that immunity applies. There is no indication that Brown used the investigation in bad faith as an opportunity to indoctrinate Diana Kubik or to attempt to gratuitously force matrimonial separation. It is clear from the complaint that Brown was simply acting in the course of his employment, the general activity which he was undertaking, i.e., a comprehensive investigation of a complaint and preparation of the case for prosecution, all discretionary functions. Indeed, discretionary governmental functions by definition allow a certain latitude of conduct and judgment on the part of the employee. The factual record requires that Brown's Motion to Dismiss and/or for Summary Judgment based on his individual immunity must be granted.

### 2. Motion to Dismiss—State Law Claims

The remainder of plaintiffs' claims will be considered under Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Technically, the 12(b)(6) motion does not attack the merits of the case, but merely challenges the pleader's failure to properly state a claim. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1356 (1990); *Golyar v. McCausland,* 738 F.Supp. 1090, 1093 (W.D.Mich.1990). In deciding a 12(b)(6) motion, this Court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. This Court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d at 1182.

The complaint must set forth enough information to outline the elements of a claim, or to permit an inference that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 422–23, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404

(1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich.1980). However, conclusory allegations are not acceptable where no facts are alleged to support that conclusion or where the allegations are contradicted by the facts. *Golyar v. McCausland,* 738 F.Supp. at 1093. This Court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Collins v. Nagle,* 892 F.2d 489, 493 (6th Cir.1989).

### 3. Elliott–Larsen Civil Rights Act

■ The defendants are entitled to dismissal on the Elliott–Larsen Civil Rights Act claims. Under that Act, no public entity or official may discriminate against a party based upon a protected class status or for exercise of religious beliefs. *See* M.C.L.A. 37.2101. However, the discrimination must consist of denial of public services or accommodations. In this case, there is no allegation that the plaintiffs were denied either public accommodations or service due to their respective religious beliefs. Accordingly, this count also must be dismissed.

### 4. Intentional Infliction of Emotional Distress

■ The plaintiffs also contend that the defendant's actions caused intentional infliction of emotional distress. The Michigan Supreme Court has previously outlined the elements which would need to be sustained in order to find such a cause of action. Those elements include: 1) extreme and outrageous conduct, 2) intent or reckless, 3) causation, and 4) severe emotional distress. *Roberts v. Auto–Owners Insurance Co.,* 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985); *Haverbush v. Powelson,* 217 Mich.App. 228, 234, 551 N.W.2d 206, 209 (1996), *appeal denied,* No. 106738, —— Mich. ——, 564 N.W.2d 37 (Mich. April 25, 1997); *Johnson v. Wayne County,* 213 Mich.App. 143, 161, 540 N.W.2d 66, 74 (1995), *appeal denied,* No. 105534, —— Mich. ——, 554 N.W.2d 903 (Mich. Oct. 22, 1996). Liability for such a claim only would lie where the conduct complained of is so outrageous in character and extreme in degree as

to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Johnson,* 213 Mich.App. at 161, 540 N.W.2d at 74.

The complaint demonstrates that Brown's conduct did not rise to the level of "extreme and outrageous." Thus Brown is entitled to summary judgment.

### 5. Other Tort Claims

Count V is captioned "Ratification" and Count VI is captioned as "Condonation of Reckless Conduct." However, the plaintiffs set forth no source or basis for these claims, and the Court is unable to find that either is a substantive cause of action under Michigan law. Generally, those counts contend that Baker had ratified and/or condoned Brown's conduct. They do not allege a cause of action against Brown himself. As such, those claims are merely repetitious of the elements alleged in the claim for failure to train and/or supervise, which the Court already has determined is not actionable. Consequently, the defendants are entitled to summary judgment as to Counts V and VI of the Amended Complaint.

Similarly, Count IX, Abuse of Process, simply restates the plaintiffs' malicious prosecution claim. The Court previously has held that Kubik is estopped from raising that claim. Accordingly, Count IX must be dismissed.

■ The plaintiffs also have alleged gross negligence. However, in order to sustain a cause of action for negligence, the plaintiffs must be able to show that the defendants owed them a special duty, in addition to any general duty owed to the public. *See Chivas,* 182 Mich.App. at 476, 453 N.W.2d at 268. In this case, the plaintiffs have pled no facts demonstrating any duty other than a duty to the public. Accordingly, they have failed to state a cause of action for gross negligence.

Count IX alleges that Brown entered the Kubiks' land and/or home without a valid arrest or search warrant and "battered" Ronald Kubik. To the extent that this claim is duplicative of the Fourth Amendment claim, Kubik's guilty plea estops him from raising this cause of action, and the facts

alleged do not show that Brown visited the Kubik home apart from his investigations. Moreover, the complaint fails to state any claim for "battery" because there is no such factual allegation in the complaint. The complaint alleges only that Brown went to "visit" Ron Kubik. No facts supporting a battery are alleged. Accordingly, Kubik is estopped from bringing a claim for trespass to land and chattels, and the complaint fails to state a claim for battery.

Finally, the plaintiffs have alleged in Count XII that the Michigan State Police altered or changed the police report. The plaintiffs contend that the original police report produced to them was not initialed as having been reviewed by a supervisor. However, they contend that the report submitted to the Court in support of the defendants' motion is initialed. Although the plaintiffs' concerns may raise evidentiary issues, the plaintiffs have failed to point to any authority, case law or other source of a substantive cause of action with respect to this count. Accordingly, the Court finds that the defendants are entitled to dismissal of Count (XII).

### 6. Claims Under the Michigan Constitution

In addition to tort claims, the plaintiffs have brought claims pursuant to the 1963 Michigan Constitution. The plaintiffs allege that the defendants violated Article I, § 2 (equal protection), § 4 (freedom of worship/religious belief), § 11 (search and seizure), § 16 (cruel and unusual punishment/unreasonable detention), § 17 (due process), and § 23 (style of laws).

With respect to most of plaintiffs state constitutional claims, the protection afforded under the Michigan Constitution is concurrent with that provided by the federal constitution, and is subject to the same analysis. Therefore, the analysis set forth in Section A of this Opinion concerning the analogous federal claims is controlling. *See Doe v. Department of Social Services,* 439 Mich. 650, 487 N.W.2d 166 (1992)(equal protection); *People v. DeJonge,* 442 Mich. 266, 501 N.W.2d 127 (1993) (free exercise/establishment clause claims); *Hauser v. Reilly,* 212 Mich.App. 184, 536 N.W.2d 865 (1995)(liberty interest in family life). With respect to the foregoing claims, the analysis set forth for the federal constitutional claims above will apply.

Also, the plaintiffs' complaint fails to state a claim with respect to Article I, § 11, § 16, and § 23. Any claims pursuant to §§ 11 and 16 are barred by collateral estoppel. *See* Section A.3, above. Plaintiffs also have failed to give any basis for any claim pursuant to § 23. Consequently, the plaintiffs have failed to state any claim under that section.

### CONCLUSION

In summary, the Court finds that defendants' motion to dismiss or for summary judgment should be granted. A separate order dismissing this case in its entirety will be entered.